IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY J. SERAFINI,        ) | |
|           Plaintiff,        ) | |
|                             ) | |
|      v.                     ) | Civil Action No. 07-253 |
|                             ) | |
|                             ) | |
| COMMISSIONER OF SOCIAL      ) | |
| SECURITY,                   ) | |
|           Defendant.        ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No.8 ) be granted; that the defendant's motion for summary judgment (Docket No.11) be denied; that the decision of the Commissioner be reversed and that judgment be entered accordingly.

II.   Report

Presently before the Court for disposition are cross motions for summary judgment.

On February 27, 2007, Jeffrey J. Serafini, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On July 29, 2002, the plaintiff filed an application for disability benefits alleging that he had been disabled since August 27, 2001 (R.93-97), and benefits were denied on December 13, 2002 (R.61-64). The plaintiff filed a second application for disability benefits on September 22,

2004 alleging he had been disabled since October 17, 2003 (R.356-359, 364) and benefits were denied on December 9, 2004 (R.329-333). On February 18, 2003 and February 8, 2005, the plaintiff requested a hearing (R.65, 334) and pursuant to that request a hearing was held on March 7, 2006 (R.29-58).  In decisions dated October 16, 2003 and April 7, 2006, benefits were denied (R.15-26, 309-320). Upon reconsideration and in decisions dated February 13, 2004 and February 8, 2007 , the Appeals Council  affirmed the prior determination (R.8-11, 321-323). On February 27, 2007,  the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v.  Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is '"more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on March 7, 2006, (R.29-58), the plaintiff appeared with counsel (R.31) and testified that he was forty-two years old (R.33) and that he last worked in 2001 as a machine shop supervisor (R.35).

The plaintiff also testified that he experiences severe chronic pain, fatigue and depression (R.35, 43); that he has suffered from pancreatitis since 2001 (R.38); that he takes medications for these conditions (R.37-38); that the medication causes severe constipation, dizziness, fatigue and nausea (R.39); that he is unable to function (R.41); that he can walk about fifty yards and lift a brick (R.42,44); that he finds sitting painful (R.44); that he spends most of his day laying on the couch (R.44); that he sleeps between zero and twenty hours a day (R.46); that he can prepare simple meals and attend to his personal needs (R.47-49) and that he watches television about sixteen to eighteen hours a day (R.50).

At the hearing a vocational expert was called upon to testify (R.54-57). The witness characterized the plaintiff's past work as heavy semi-skilled to skilled in nature and non-transferable (R.54-55). He was asked to assume an individual of the plaintiff's education, training and work experience who is able to perform light work and he testified that such an individual could not perform the plaintiff's past work (R.55). However, he did testify that if the plaintiff could perform light or sedentary work, there were a number of jobs he could perform (R.55-56). However, the witness also testified that if such an individual experienced excessive absences, he could not be employed (R.56-57).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).  These provisions are also applied for purposes of establishing a period of disability.  42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).  Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated for allergic rhinitis, a deviated septum and epistaxis during the period from March 2001 through May 2001. His nose was cauterized. He experienced a severe nosebleed on May 11, 2001 which was related to a work place allergy (R.137-143).

The plaintiff was hospitalized at the Punxutawney Area Hospital from August 28, 2001 through August 31, 2001 for acute necrotizing pancreatitis, hypokalemia and a history of tobacco dependence and alcohol withdrawal with resulting DTS. He was transferred to West Penn Hospital (R.144-187).

In a statement dated September 25, 2001, Dr. Howard Semis of Associated Surgeons noted that the plaintiff had been in the West Penn Hospital ICU since August 29, 2001 and would remain hospitalized for many months (R.188).

The plaintiff was hospitalized at the West Penn Hospital from August 31, 2001 through October 19, 2001 for pancreatitis and sepsis, respiratory failure and infections. Surgery and medications were provided and on discharge the plaintiff was transferred to the Select Specialty Hospital (R.189-233, 418-444).

In a letter dated October 25, 2001, Dr. Ravi Alagar reported that the plaintiff had been transferred from West Penn Hospital to Select Specialty Hospital on October 19, 2001; that he continued to need specialized treatment and would require nursing care and rehabilitation prior to returning home (R.234).

The plaintiff was hospitalized at the Select Specialty Hospital from October 19, 2001 through November 22, 2001 for continued aggressive care of his pancreatitis. Ultimately, he was sent home (R.268-281, 445-469).

On December 6, 2001, the plaintiff's gastrostomy and jejunostomy tubes were removed (R.235).

In an assessment performed on December 10, 2002, Dr. Armand A. Villarreal diagnosed pain resulting from the plaintiff's pancreatitis. Increased pain medication was to be considered (R.282-283).

In a medical report covering the period from December 11, 2001 through September 13, 2002, Michael P. Ondich, D.O. reported continued treatment for management of pain (R.236-249).

In a report of an examination conducted on October 5, 2002, Dr. Durre Ahmed noted complaints of radiating back pain. A history of pancreatitis, depression and abdominal pain was noted. A need for continuing treatment was noted. The plaintiff was said to be able to lift ten pounds and stand, sit or walk for about an hour (R.250-256).

After reviewing the medical evidence and in a residual functional capacity assessment completed on December 3, 2002, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours. It is further noted:

> In recent evaluations claimant was not observed to have significant pain or to be significantly uncomfortable. He was not observed to have any significant limitations in movement of his arms or legs or back. He was observed to retain adequate strength and was observed to walk normally and not have significant balance problems. Claimant's allegations of some limitations in lifting, carrying, climbing, and bending are not credible. Claimant's allegations of significant limitations of these functions are not credible. Claimant's allegations of significant limitations in standing and walking are not credible (R.257-267).

The plaintiff was treated by Dr. Ondich between January 26, 2001 and October 20, 2004. Pain and other medications were prescribed.

The plaintiff was treated at the Associated Surgeons practice between December 21, 2001 and October 21, 2004 for radiating back pain related to his pancreatitis and abdominal pseudocyst (R.579-609).

The plaintiff attended the Armstrong County Memorial hospital pain clinic on October 22, 2004 for abdominal and back pain related to pancreatitis. His medication was changed (R.610-615).

In a report of a psychiatric review completed on November 23, 2002, no medically determinable ailment was said to exist (R.616-628).

After reviewing the medical evidence and in a residual functional capacity assessment completed on December 8, 2004, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit for about six hours. The reviewer observed:

> The claimant has alleged performing few, if any, household chores. However, the overall evidence suggests that he has the ability to care for himself and maintain his home. He is able to drive a car. He takes out the trash when necessary. He cooks and does light housework. He uses a broom to sweep the floor. He can carry 1-2 grocery bags when grocery shopping. He is able to care for his personal needs independently. The medical evidence shows that despite ongoing treatment, he continues to have pain which significantly impacts on his ability to perform work related activities. The treatment for his Chronic Pancreatitis has been essentially routine and conservative in nature. He did undergo surgery for his Chronic Pancreatitis, which has resulted in significant improvement of his symptoms. He does not require an assistive device to ambulate. Additionally, he has been prescribed, and taken, appropriate medications for the alleged impairments. The medical records reveal that the medications have been essentially ineffective in controlling his symptoms. Although he has alleged various side effects from use of prescribed medication, the record indicates that those side effects are mild and would not interfer with his ability to perform work activities (R.406-412).

The plaintiff attended physical therapy between February 10, 2005 and May 15, 2005 for pain control (R.660-667).

The plaintiff was treated by Michael Ondich, D.O. between October 22, 2004 and July 6, 2005 for abnormal triglyceride levels and chest congestion (R.649-659, 668-669).

In a statement dated January 24, 2005, Dr. Howard Semis reported rendering treatment since September 25, 2001 for chronic pain resulting in chronic use of opiates and hyperlipidemia which placed the plaintiff at risk for further episodes of pancreatitis and concluded that the plaintiff is totally disabled and unable to work (R.629-632).

The plaintiff was treated by Associated Surgeons between September 25, 2001 and September 26, 2005 for follow up treatment for pancreatitis.

In a report dated December 19, 2005 and covering treatment since August, 2001, Dr. Howard Semis diagnosed prolonged recovery from pancreatitis, chronic flank and back pain, increased cholesterol and triglycerides, pain medication dependency, constipation from his medication, chronic depression and gastroesophageal reflux. As a result of the sedation from his medication, the doctor concluded that clear thought would be difficult and driving risky. The doctor summarized that the plaintiff remained disabled (R.670).

The plaintiff was treated at the Armstrong County Memorial Hospital pain clinic between November 14, 2004 and January 9, 2006 (R.671-686).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms.  Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974).  As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In <u>Good</u> v. <u>Weinberger</u>, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> <u>Bittel</u> seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in

assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The medical evidence shows the claimant has a history of pancreatitis characterized by complaints of chronic back and abdominal pair. However, in April 2004, a CT scan of the abdomen revealed no abnormalities ... and it was noted that there had been interval resolution of the claimant's pancreatitis. The Administrative Law Judge also notes that a physical examination in November 2004 by Dr. Barrett revealed no rigidity or guarding of the abdomen and no evidence of organomegaly; and in January 2006, Dr. Barrett noted that the claimant had gained a significant amount of weight ... Finally, it is noted that the claimant has not required aggressive medical treatment or frequent hospital confinement/emergency room care for his condition notwithstanding his complaints of chronic pain.
>
> The medical evidence also shows the claimant has a history of hyperlipidemia. However, there is no evidence of any complications due to this condition ...
>
> The medical evidence also shows the claimant has been diagnosed with a mental/emotional disorder...
>
> The evidence shows the claimant has a history of depression... [However] the evidence fails to establish that the claimants impairment meets the ... criteria of Listing 12.04.
>
> \* \* \*
>
> [T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.
>
> The claimant reported he experiences chronic back/abdominal pain and shortness of breath. In addition, the claimant reported that he is unable to lift and carry heavy objects or to sit, stand and walk for prolonged periods of time due to his discomfort.
>
> However, the claimant's self-reported activities of daily living are inconsistent with an individual experiencing totally debilitating symptomatology.
>
> \* \* \*

> Based on the foregoing, the Administrative Law Judge concludes that the claimant retains the residual functional capacity to perform simple, repetitive, routine (i.e. unskilled) work at the light exertional level in a non-production or quota based work environment involving only simple, work-related decisions, and in general, relatively few work place changes with no more than occasional interaction with coworkers, supervisors or the general public.

> \* \* \*

> [T]he Administrative Law Judge notes that Dr. Semis failed to complete a residual functional capacity assessment of the claimant's ability to perform work-related activities and his opinion that the claimant is disabled is an issue reserved to the Commissioner and not entitled to controlling weight or deterrence. Nonetheless, it is noted that Dr. Semis' opinion is inconsistent with the totality of the evidence.

> \* \* \*

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform.

> \* \* \*

> The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision. (R.21-26).

The record demonstrates the plaintiff experienced an acute bout of necrotizing pancreatitis in August, 2001. As a result he underwent a prolonged period of hospitalization and surgery and developed sepsis, respiratory failure and infections. In addition, during his hospitalizations he had to spend about a month in the West Penn ICU. Throughout his treatment up until his report of December 19, 2005, Dr. Semis of Associated Surgeons reported that the plaintiff continued to experience chronic pain as a result of his pancreatitis; had certain other related and unrelated ailments, and had become dependent on pain medication to function. As a result of this dependence, Dr. Semis concluded that the plaintiff's thought processes were compromised and that his driving was risky.

The nature and severity of the plaintiff's ailments have been corroborated by other physicians and only non-examining, non-treating physicians have appeared to negate his symptoms. For this reason, there is little evidence to support the conclusion of the Commissioner that the plaintiff is not disabled, and substantial evidence to support the conclusion that the plaintiff is unable to be gainfully employed.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is not supported by substantial evidence. For this reason, it is respectfully recommended that the plaintiff's motion for summary judgment be granted; that the defendant's motion for summary judgment be denied; that the decision of the Commissioner be reversed and that judgment be entered accordingly.

Within thirteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                    Respectfully submitted,

                    s/ ROBERT C. MITCHELL,
                    United States Magistrate Judge

Dated: October 3, 2007